1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11
12

REID YEOMAN and RITA MEDELLIN, on behalf of themselves and all others similarly situated

CASE NO. 11cv701 WQH (BGS)

ORDER

13

Plaintiffs,

vs.

14

IKEA U.S. WEST, INC.; DOES 1-50, inclusive,

15
16

Defendants.

HAYES, Judge:

17
18

The matter before the Court is the Motion for Class Certification filed by Plaintiff Rita Medellin.  (ECF No. 30).

19

**I.      Background**

20
21

On March 2, 2011, Plaintiff Reid Yeoman initiated this action by filing a Complaint in the Superior Court of California for the County of San Diego.  The Complaint contained one claim for violation of the Song-Beverly Credit Card Act of 1971.  On April 6, 2011, the matter was removed to this Court by Defendant Ikea U.S. West, Inc. ("Ikea").

22
23
24
25

On November 8, 2011, Plaintiff filed an Amended Complaint which added Plaintiff Rita Medellin.  Plaintiffs allege that they purchased items from Ikea using their credit cards. Plaintiffs allege that "[d]uring the credit card transaction[s], the cashier asked plaintiff[s] for [their] ZIP code and, believing [they were] required to provide the requested information to complete the transactions, [plaintiffs] provided it."  (ECF No. 25 at 3).  Plaintiffs allege that

26
27
28

"Ikea systematically and intentionally violates the [Song-Beverly Credit Card Act of 1971] by uniformly requesting that cardholders provide personal identification information, including their ZIP codes, during credit card transactions, and then recording that information in electronic database systems." *Id.* at 2.

On January 13, 2012, Plaintiff Medellin filed a Motion for Class Certification.

**II.     Standard of Review**

"As the party seeking class certification, [plaintiff] bears the burden of demonstrating that she has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)); *see also Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 591 (9th Cir. 2010) ("[W]hether the suit is appropriate for class resolution must be actually demonstrated, not just alleged, to the district court's satisfaction.").  The four requirements of Rule 23(a) are: "(1) numerosity (a class [so large] that joinder of all members is impracticable); (2) commonality (questions of law or fact common to class); (3) typicality (named parties claims or defenses are typical ... of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class)." *Mego Fin. Corp. Sec. Litig. v. Nadler*, 213 F.3d 454, 462 (9th Cir. 2000) (internal quotations omitted).  Federal Rule of Civil Procedure 23(b) provides that a class action may be maintained if: (1) "prosecuting separate actions by or against individual class members would create a risk of ... inconsistent or varying adjudications ... or adjudications ... that, as a practical matter, would be dispositive of the interests of the other members not parties ... or would substantially impair or impede their ability to protect their interests"; (2) "the party opposing the class has acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole"; or (3) "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(1)-(3).

In analyzing whether a plaintiff has met her burden to show that the above requirements

are satisfied, a court must "analyze[] the allegations of the complaint and the other material before [the court] (material sufficient to form reasonable judgment on each [Rule 23] requirement)." *Blackie v. Barrack*, 524 F.2d 891, 900-01 (9th Cir. 1975) (noting that a court is to take the substantive allegations in the complaint as true); *see also Hanon*, 976 F.2d at 509; *Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 233 (C.D. Cal. 2006). "The Court is at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case." *In re Unioil Secs. Litig.*, 107 F.R.D. 615, 618 (C.D. Cal. 1985). However, a court should not judge the merits of the plaintiff's claims at the class certification stage. *See United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1232 (9th Cir. 1996); *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978).

## III.   Discussion

Plaintiff seeks class certification for the following class:

> [A]ll persons from whom Ikea requested and recorded a ZIP Code in conjunction with a credit card transaction in California from February 16, 2010 through the date of trial in this action (the "Class").

> Excluded from the Class are (i) transactions wherein personal information was required for a special purpose incidental but related to the individual credit card transaction, including, but not limited to, information relating to shipping, delivery, servicing, or installation of the purchased merchandise, or for special orders; and (ii) transactions wherein a credit card issued to a business was used. Also excluded from the Class are the officers and directors of Defendant and of its corporate parents, subsidiaries and affiliates, or any entity in which Defendant has a controlling interest, and the legal representatives, successors or assigns of any such excluded persons or entities, and the Court to which the matter is assigned.

(ECF No. 33 at 5).[1]

---

[1]   In the Motion for Class Certification, Plaintiff sought a class consisting of "[A]ll persons from whom Ikea requested and recorded a ZIP Code in conjunction with a credit card transaction in California from February 16, 2010 through the date of trial in this action;" however, Plaintiff did not include exceptions for transactions wherein personal information was required for a special purpose incidental to the individual credit card transaction and transactions wherein a credit card issued to a business was used. (ECF No. 30-1 at 5). Plaintiff added the exclusions to a revised class definition in her reply brief. The Court permitted Defendant an opportunity to respond to the revised class definition in a surreply. On April 12, 2012, Defendant submitted a surreply.

Defendant contends that the proposed class is overbroad because it would include individuals who voluntarily provided their personal information to Ikea through alternative means including participating in the Ikea Family reward program, enrolling for email or postal mail through www.ikea.com, completing in-store promotional forms, or requesting direct mailing or catalogs.  Defendant contends that the Song-Beverly Credit Card Act addresses "*one* important privacy concern: to prevent corporations from needlessly storing consumer information for use in direct-mail marketing campaigns or selling the information to other marketers for an identical purpose." (ECF No. 40 at 4) (emphasis added).  Defendant contends that "allowing persons who have volunteered personal identification information to thereafter assert a claim for a violation of the Act, predicated on that person's privacy interests, is in direct contravention to the purpose of the Act and would be entirely illogical." *Id.*

Plaintiff contends that "the protections afforded by [the Song-Beverly Credit Card Act] cannot be waived by a customer voluntarily providing [personal identification information] during unrelated circumstances separate from a credit card transaction."  (ECF No. 33 at 2). Plaintiff contends that the Song-Beverly Credit Card Act "does not state that if a customer ever engaged in one of the enumerated exempted transactions, or provided [personal identification information] to the Defendant at another time separate from the credit card transaction, the customer is forever banned from making a claim ...." *Id.* at 4.

The Song-Beverly Credit Card Act provides:

> [N]o person, firm, partnership, association, or corporation that accepts credit cards for the transaction of business shall do any of the following: ...

> Request, or require as a condition to accepting the credit card as payment in full or in part for goods or services, the cardholder to provide personal identification information, which the person, firm, partnership, association, or corporation accepting the credit card writes, causes to be written, or otherwise records upon the credit card transaction form or otherwise....

> For purposes of this section "personal identification information," means information concerning the cardholder, other than information set forth on the credit card, and including, but not limited to, the cardholder's address and telephone number.

Cal. Civ. Code § 1747.08.  "[A] cardholder's ZIP code, without more, constitutes personal identification information within the meaning of section 1747.08." *Pineda v.*

*Williams-Sonoma Stores, Inc.*, 51 Cal. 4th 524, 530 (Cal. 2011) (holding that the court's ruling that ZIP code information constitutes personal information within the meaning of section 1747.08 applies retrospectively).

The Song-Beverly Credit Card Act was "a response to two principal privacy concerns. [F]irst, that with increased use of computer technology, very specific and personal information about a consumer's spending habits was being made available to anyone willing to pay for it; and second, that acts of harassment and violence were being committed by store clerks who obtained customers' phone numbers and addresses." *Florez v. Linens 'N Things, Inc.*, 108 Cal. App. 4th 447, 452 (2003) (quotation omitted); *see also Gass v. Best Buy Co., Inc.*, Case No. CV 11–01507 SJO (JCGx), 2012 WL 538251 at *2 (C.D. Cal. Feb. 13, 2012) (same); *Rothman v. General Nutrition Corp.*, Case No. CV 11–03617 SJO (RZx), 2011 WL 6940490 at *2 (C.D. Cal. Nov. 17, 2011) (same).

However, "nothing in the [Song-Beverly Credit Card] Act prohibits corporations from obtaining personal information from consumers who provide their information voluntarily." *Rothman*, 2011 WL 6940490 at *2 (citing *Florez*, 108 Cal. App. 4th at 451). In *Rothman*, the district court denied certification of a class, in part, because the class definition included individuals who voluntarily provided personal information to the retailer at the time of the credit card transaction by presenting a "Gold Card" customer loyalty card which contained their personal identification information. *Rothman*, 2011 WL 6940490 at *3.

The Song-Beverly Credit Card Act does not provide an exception allowing a retailer to  request or require the cardholder to provide personal identification information as a condition of accepting a credit card payment when the individual has previously or subsequently provided any personal information to the retailer. Such an exception would contravene one of the purposes of the Song-Beverly Credit Card Act which is to prevent store clerks from obtaining customers' personal identification information. The Court concludes that Class definition is not overbroad on the grounds that it may include individuals who voluntarily provided their personal identification information to Ikea at some time other than in conjunction with the credit card transaction during which Ikea requested and recorded the individuals' ZIP code information.

With regard to the Ikea Family reward program, Defendant has submitted the declaration of John Robinson who stated: "Within one month of the ruling in the matter of *Pineda v. Williams-Sonoma Stores, Inc., et al.*, Ikea completely suspended ZIP Code requests by its in-store cashiers in all retail locations, including California retail locations." (ECF No. 31-2 at 2). *Pineda* was issued on February 10, 2011.  Robinson stated in his deposition taken on December 21, 2011: "We're just starting in the last few months an Ikea loyalty program." (ECF No. 33-1 at 6).  Robinson stated in his declaration dated January 30, 2012, that "Ikea currently has a rewards program, the IKEA Family Program, which customers can volunteer to enroll in by providing their name, address, ZIP Code, telephone number, and often times, electronic mail addresses." (ECF No. 31-2 at 2).  According to Defendant, Ikea stopped its practice of requesting ZIP code information from customers using credit cards in approximately March 2011, but the Ikea Family reward program did not begin until shortly before December 2011.  Defendant has failed to show that the Class may be comprised of individuals who voluntarily submitted their personal identification information along with a credit card transaction because the Ikea Family reward program began after Ikea ceased collecting ZIP code information along with credit card transactions.  The Class definition is not overbroad on the grounds that it may include individuals who voluntarily provided their personal identification information to Ikea through the Ikea Family reward program along with the credit card transaction during which Ikea requested and recorded the individuals' ZIP code information.

A.    **Federal Rule of Civil Procedure 23(a)**

1.    **Numerosity**

Plaintiff contends that the numerosity requirement is satisfied on the grounds that there were more than a million transactions in which Ikea recorded ZIP codes along with credit card transactions during the class period. Plaintiff contends that "from February 2010 through December 2010, Ikea requested and recorded 1,112,097 ZIP codes from customers during credit card transactions at its California stores...." (ECF No. 30-1 at 12) (citing Ikea's Responses to Interrogatories, ECF No. 30-2 at 69, 71; Robinson Depo., ECF No. 30-2 at 34).

Defendant has not opposed class certification based on the failure to satisfy the

1   numerosity requirement.

2       The "numerosity" requirement is satisfied if "the class is so numerous that joinder of

3   all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Ninth Circuit has held that this

4   requirement can be satisfied with a class of as little as 39 members, particularly if it is

5   impracticable for the class members to be joined in the suit (e.g., because the size of each

6   individual claim is relatively small or because the members are geographically diverse). *See*

7   *Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*,

8   459 U.S. 810 (1982); *cf. Doe v. Los Angeles Unified Sch. Dist.*, 48 F. Supp. 2d 1233, 1239

9   (C.D. Cal. 1999) ("The exact size of the class need not be known so long as general knowledge

10  and common sense indicate that it is large.").

11      The Court finds that the numerosity requirement is satisfied.

12          **2.     Commonality**

13      Plaintiff contends that this litigation concerns common questions of law and fact.

14  Plaintiff contends that "the key common questions in this action are whether Ikea requested

15  and recorded ZIP codes from Class members during their credit card purchase transactions, and

16  whether this common course of conduct violates Section 1747.08 of the Credit Card Act."

17  (ECF No. 30-1 at 12).

18      Defendant contends that individual issues of whether customers volunteered their ZIP

19  code information and whether the customer objectively perceived the request for ZIP code

20  information to be a requirement of the credit card transaction predominate over common

21  question. Defendant also contends that the proposed Class is unascertainable.

22      A class has sufficient commonality "if there are questions of fact and law which are

23  common to the class." Fed. R. Civ. P. 23(a)(2). According to the Ninth Circuit:

24      The commonality preconditions of Rule 23(a)(2) are less rigorous than the
        companion requirements of Rule 23(b)(3). Indeed, Rule 23(a)(2) has been
25      construed permissively. All questions of fact and law need not be common to
        satisfy the rule. The existence of shared legal issues with divergent factual
26      predicates is sufficient, as is a common core of salient facts coupled with
        disparate legal remedies within the class.
27
    *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).
28
        Defendant makes similar arguments under Rule 23(a)(2) regarding commonality and

1    Rule 23(b)(3) regarding predominance.  Given the permissive construction of Rule 23(a)(2),

2    the Court presumes that Rule 23(a)(2)'s commonality requirement has been satisfied.

3                   **3.      Typicality**

4           Plaintiff contends that her claim is typical of the claims of the other class members

5    because Plaintiff "was subject to Ikea's uniform policy of requesting and recording ZIP codes

6    from customers in connection with credit card purchase transactions."  (ECF No. 30-1 at 13).

7    Plaintiff contends that "each member of the Class has suffered the same violations of their

8    statutory rights."  *Id.*

9           Defendant contends that Plaintiff's claim is not typical because Plaintiff testified at her

10   deposition that she handed her credit card to the cashier.  Defendant contends that Ikea has

11   machines at the checkout counter that allow the customer to swipe their own credit card.

12   Defendant contends that "Plaintiff's credit card *likely* could not read ...."  (ECF No. 31 at 19)

13   (emphasis added).  Defendant contends that when a cashier manually enters the credit card

14   information to complete a transaction rather than swiping the credit card, the cashier collects

15   ZIP code information "to allow the issuing bank an additional security check."  *Id.* at 18.

16   Defendant contends that the factual circumstances of Plaintiff's credit card transaction "may

17   fall under one of the exceptions provided for within the Act."  *Id.* at 19.

18          Plaintiff stated at her deposition that she purchased goods from Ikea using her credit

19   card in August of 2010.  Plaintiff stated that "[t]he lady rang up my purchase and told me the

20   total. I gave her my credit card and she swiped it or whatever she did. And then she asked me

21   for my zip code and I gave it to her."  (ECF No. 31-9 at 6).  Plaintiff was asked: "When you

22   say gave her, you mean physically give her the credit card?"  *Id.* at 8.  Plaintiff answered:

23   "Yes, I handed her my credit card."  *Id.*  Plaintiff was asked: "Do you know what she did with

24   it?"  *Id.*  Plaintiff answered: "I believe she swiped it ...."  *Id.*  Plaintiff stated: "I know I didn't

25   swipe the card."  *Id.*  Plaintiff was asked: "And you're saying that you saw her do some

26   movement with the card that looked like to you that she swiped it on her machine?"  *Id.* at 9.

27   Plaintiff answered: "Yes."  *Id.*  Plaintiff was asked: "At some point did [the cashier] ask you

28   for your zip code?"  *Id.*  Plaintiff answered "Yes."  *Id.*  Plaintiff was asked: "And when exactly

     did she ask you for your zip code?"  *Id.* at 10.  Plaintiff answered: "After I had given her my

credit card and she had done something with it at the machine." *Id.* Plaintiff was asked: "At some point then did she enter something into her machine with her hand?" *Id.* Plaintiff answered: "Yes." *Id.* Plaintiff was asked: "Was that before or after you gave her your zip?" *Id.* Plaintiff answered: "After." *Id.*

The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). According to the Ninth Circuit, "[t]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* (quotation omitted). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508 (quotation omitted).

Plaintiff testified that the cashier swiped her credit card. Although Defendant contends that it is "likely" that Plaintiff's credit card was unable to be swiped, Defendant has submitted no evidence to support the contention. (ECF No. 31 at 19). Plaintiff has also testified that she was asked to provide her ZIP code information to the cashier. Given the permissive construction of Rule 23(a)(2), the Court presumes that Rule 23(a)(2)'s typicality requirement has been satisfied.

### 4.   Adequacy

Plaintiff contends that the adequacy requirements are satisfied. Plaintiff contends that she will fairly and adequately represent the Class. Plaintiff contends that her claim is reasonably co-extensive with the Class. Plaintiff contends that there is not conflict between her and the Class. Plaintiff contends that her retained counsel has "significant experience in prosecuting large consumer protection class actions ...." (ECF No. 30-1 at 14).

1   Defendant has not opposed class certification based on the failure to satisfy the

2   adequacy requirement.

3          Rule 23(a) requires that "the representative parties will fairly and adequately protect the

4   interests of the class."  Fed. R. Civ. P. 23(a)(4).  "To satisfy constitutional due process

5   concerns, absent class members must be afforded adequate representation before entry of a

6   judgment which binds them."  *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S.

7   32, 42-43 (1940)).  "Resolution of two questions determines legal adequacy: (1) do the named

8   plaintiffs and their counsel have any conflicts of interest with other class members and (2) will

9   the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"

10  *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

11         The Court finds that the adequacy requirements are satisfied.

12         **B.     Federal Rule of Civil Procedure 23(b)**

13         As set out above, in order for a class to be certified, Plaintiffs must demonstrate that the

14  requirements of one of the three subdivisions of Rule 23(b) are satisfied.  Plaintiffs assert that

15  certification is appropriate under Rule 23(b)(3).  Rule 23(b)(3) states that a class action may

16  be maintained if the court finds that "the questions of law or fact common to class members

17  predominate over any questions affecting only individual members, and that a class action is

18  superior to other available methods for fairly and efficiently adjudicating the controversy."

19  Fed. R. Civ. P. 23(b)(3).

20         **1.     Predominance**

21         Plaintiff contends that common questions of law and fact predominate over other issues

22  in this case on the grounds that Ikea has a uniform policy and practice of requesting personal

23  identification information from customers during credit card transactions.  Plaintiff contends

24  that the class action will resolve whether Defendant's policy and practice of requesting ZIP

25  code information from customers during credit card transactions violates the Song-Beverly

26  Credit Card Act.  Plaintiff contends that the question of whether Defendant's request was

27  actually a condition of accepting a credit card as payment is irrelevant.

28         Defendant contends that Ikea did not have a uniform process for requesting ZIP code

information on the grounds that "the timing of a Ikea point-of-sale cashier's request is not

1  uniform ...." (ECF No. 31 at 14).  Defendant contends that common questions of law and fact

2  do not predominate over individual inquiries on the grounds that a retailer's request for

3  personal identification information must be viewed objectively from the customer's standpoint.

4  Defendant contends that individual mini-trial will be necessary to determine if each class

5  member perceived the request for personal identification information as a condition of the

6  credit card transactions.  Defendant contends that Ikea's request for a ZIP code information

7  was never a condition to completing a sale because customers could refuse to provide a ZIP

8  code or a cashier could enter 00000 or 99999 in place of the customer's true ZIP code.

9       Rule 23(b)(3)'s "predominance" standard requires a stronger showing by plaintiffs than

10  Rule 23(a)'s "commonality" standard.  *See Hanlon*, 150 F.3d at 1019.  "The Rule 23(b)(3)

11  predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant

12  adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

13  "In contrast to Rule 23(a)(2) [i.e., the commonality requirement], Rule 23(b)(3) focuses on the

14  relationship between the common and individual issues.  'When common questions present a

15  significant aspect of the case and they can be resolved for all members of the class in a single

16  adjudication, there is clear justification for handling the dispute on a representative rather than

17  on an individual basis.'" *Hanlon*, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur

18  R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed. 1986)).

19       The Song-Beverly Credit Card Act is violated when "a consumer would perceive the

20  store's request for information as a condition of the use of a credit card." *Florez*, 108 Cal.

21  App. 4th at 451 (quotations omitted); *see also Pineda*, 51 Cal. 4th at 528.  An individual is not

22  required to plead a subjective belief that the request for personal identification information was

23  a condition of the credit card payment. *See Korn v. Polo Ralph Lauren Corp.*, 644 F. Supp.

24  2d 1212, 1216 (E.D. Cal. 2008) ("plaintiff need not expressly allege that he believed such

25  information was necessary to complete the transaction.").  A court applies an objective test to

26  determine whether a retailer's request for personal identification information would be

27  perceived as a condition of credit card payment. *See Florez*, 108 Cal. App. 4th at 451 ("[T]he

28  retailer's request for personal identification information must be viewed from the customer's

standpoint.").  "[T]he retailer's unannounced subjective intent is irrelevant." *Id.*

1      Plaintiff has submitted the deposition of Bob Blum for Ikea who states that Ikea store

2   point-of-sale computers in California contain the same "ZIP code capture" function. (ECF No.

3   30-2 at 49). Blum states that a document titled "Process for Entering ZIP Codes at the

4   Register" provides "a quick run-through of a typical transaction and where it would prompt

5   for ZIP code." *Id.* at 50; *see also* ECF No. 30-2 at 6, document titled "Process for entering ZIP

6   codes at the register." First, the cashier rings up the articles of merchandise. *Id.* Next, the

7   "cashier hits total." (ECF No. 30-2 at 51). Next, a "prompt comes up asking for the

8   customer's ZIP code." *Id.* (explaining that the prompt is the same on all computers in

9   California). Next, the "cashier enters the customer's ZIP code or puts in a series of zeros if the

10   customer does not want to give the ZIP code." *Id.* at 51. Finally, the "transaction is completed

11   and customer leaves." *Id.*

12      Plaintiff has submitted the deposition of John Robinson for Ikea who states that Ikea

13   creates "policies and procedures that apply to each of its stores uniformly." (ECF No. 30-2 at

14   29). Robinson states that Ikea provides "one manual [which is] updated periodically" titled

15   "Ikea Retail Checkout Services Manuel." *Id.*; *see also* ECF No. 30-2 at 56, US Checkout

16   Services Manual. Robinson states that the process for capturing a customer's ZIP code

17   information includes the cashier scanning or entering the articles of merchandise. (ECF No.

18   30-2 at 30). Next, the "cashier hits total." *Id.* Robinson states that when a customer uses a

19   credit card, "the credit card would be scanned after the cashier hit[s] total ...." *Id.* Robinson

20   states that a "prompt comes up asking for the customer's ZIP code." *Id.* Finally, if the

21   customer paid with a credit card, the cashier "collect[s] a signature to complete the

22   transaction." *Id.* at 31.

23      Plaintiff has submitted the interrogatory responses from Ikea which states that "ZIP

24   code data for point-of-sale credit card purchases was requested in its California retail stores

25   from approximately February 2010 through portions of May 2010, August 2010 through

26   October 2010, portions of November 2010 through December 2010, and January 2011 through

27   February 2011." (ECF No. 30-2 at 69). Ikea states that it "received ZIP code information for

28   point-of-sale in-store credit card purchases from February 2010 through December 2010, for

which [Ikea] received a valid ZIP code on 1,112,097 occasions...." *Id.* at 71.

Plaintiff has shown that Ikea has a uniform policy and practice of requesting personal identification information from customers during credit card transactions.  Plaintiff has shown that common questions of law and fact predominate over other issues in this case on the grounds that Ikea's uniform policy and practice of requesting personal identification information from customers during credit card transactions can be evaluated to determine if the Song-Beverly Credit Card Act was violated.  Although Defendant contends that the precise timing of a cashier request for ZIP code information may have varied from immediately after the merchandise was totaled to immediately after the customer indicated whether she would pay with a credit card, the Court's objective evaluation of whether Ikea's request for personal identification information would be perceived as a condition of the credit card payment is not be altered by the distinction.  *See Gass v. Best Buy Co., Inc*., Case No. CV 11–01507 SJO (JCGx), 2012 WL 538251 at *9-10 (C.D. Cal. Feb. 13, 2012) (explaining that a customer could reasonably perceive that a request for personal identification information before the customer indicated the payment method was a condition of completing the credit card transaction) (citing *Florez*, 108 Cal. App. 4th at 453)).  The Court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members.

### 2.    Superiority

Plaintiff contends that an individual Class member's potential recovery would likely be small because Song-Beverly Credit Card Act provides a civil penalty up to $250.00 for the first violation and up to $1,000.00 for each subsequent violation.  Plaintiff contends: "Because the costs of litigation and attorneys' fees would swamp any amount that he or she could recover, no individual Class member would be motivated to pursue litigation and Defendant would be rewarded for its unlawful conduct."  (ECF No. 30-1 at 16).  Plaintiff also contends that "prosecution of the claims on an individual basis would cause significantly more burden for the courts, Ikea, and the Class members."  *Id.* at 17.

Defendant contends that "[t]he individualized issues that destroy predominance also diminish the utility of the class action model and fatally undermine superiority."  (ECF No. 31 at 20).  Defendant contends that a class action is not the superior method for adjudicating Plaintiff's claims on the grounds that the "issues would have to be resolved in mini-trials."

(ECF No. 40 at 7).

Factors that the court considers to determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" include:

> (A) the class members interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23 (b)(3).  "[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis."  *Zinser v. Accujix Research Inst., Inc*., 253 F .3d 1180, 1190 (9th Cir. 2001).

The Court has found that questions of law and fact common to class members predominate over any questions affecting only individual members.  The Court finds that it is unlikely that there will be difficulties in managing a class action in this case.  The Court finds that individual members' interests in individually controlling the prosecution or defense of separate actions is likely minimal.  The Court is aware of one other case involving the same controversy, *Hurtado v. IKEA U.S. West, Inc.,* Case No. 11cv2749 WQH (BGS); however, *Hurtado* has sought leave to be consolidated with this action.  (ECF No. 38 at 2 "[I]f the class certification motion is granted, plaintiff Hurtado's claims will be subsumed within the class.")  The Court finds that it is desirable to concentrate the litigation in this forum.  The Court concludes that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

## C.      Appointment of Class Counsel

Plaintiff requests the Court appoint Stonebarger Law, APC, Blood Hurst & O'Reardon, LLP, and Aiman-Smith & Marcy as class counsel.  Plaintiffs have submitted the firm resume for Stonebarger Law, APC, Blood Hurst & O'Reardon, LLP, and Aiman-Smith & Marcy. (ECF No. 30-2 at 129-49).

Rule 23(g)(1) also requires the Court to appoint class counsel.  In appointing class counsel, the court considers:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class

Fed. R. Civ. P. 23(g)(1)(A).  "If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class."  Fed. R. Civ. P. 23(g)(2).

Plaintiff seeks the appointment of Stonebarger Law, APC, Blood Hurst & O'Reardon, LLP, and Aiman-Smith & Marcy; however, Plaintiff has failed to show that multiple class counsel is permissible or appropriate in this case.

The parties shall submit supplemental briefing on the appointment of class counsel pursuant to Federal Rule of Civil Procedure 23(g)(2) no later than ten days from the date of this order.

**IV.    Conclusion**

IT IS HEREBY ORDERED that the Motion for Class Certification (ECF No. 30) filed by Plaintiff Rita Medellin is GRANTED.  The Class consists of all persons from whom Ikea requested and recorded a ZIP Code in conjunction with a credit card transaction in California from February 16, 2010 through the date of trial in this action (the "Class").  Excluded from the Class are (i) transactions wherein personal information was required for a special purpose incidental but related to the individual credit card transaction, including, but not limited to, information relating to shipping, delivery, servicing, or installation of the purchased merchandise, or for special orders; and (ii) transactions wherein a credit card issued to a business was used.  Also excluded from the Class are the officers and directors of Defendant and of its corporate parents, subsidiaries and affiliates, or any entity in which Defendant has a controlling interest, and the legal representatives, successors or assigns of any such excluded persons or entities, and the Court to which the matter is assigned.

1    IT IS FURTHERED ORDERED that the parties shall submit supplemental briefing on

2  the appointment of class counsel pursuant to Federal Rule of Civil Procedure 23(g)(2) no later

3  than ten days from the date of this order.

4  DATED:  May 4, 2012

5

6  **WILLIAM Q. HAYES**
   United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28