UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REID YEOMAN and RITA MEDELLIN, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>IKEA U.S.A. WEST, INC.,<br><br>Defendant. | Civil No. 11cv701-WQH (BGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO REOPEN DISCOVERY AND EXTEND EXPERT DEADLINES**<br><br>**[Doc. No. 100]** |

On June 26, 2013, the Hon. William Q. Hayes referred Plaintiffs' pending motion to reopen discovery and extend expert deadlines to the undersigned. (Doc. No. 113.) As an initial matter, Plaintiffs did not follow Judge Skomal's Chambers' Rules with respect to bringing this dispute to the Court's attention, and because it is a scheduling and discovery matter, Plaintiffs should have done so and filed the motion before the undersigned. Nevertheless, Plaintiffs filed the instant motion on April 26, 2013 before Judge Hayes. (Doc. No. 100). Defendant opposes the motion. (Doc. No. 102.)

///

///

The Court has thoroughly reviewed all of the papers filed by both parties, not only with respect to the pending discovery motion, but also all of the papers filed in support of and opposition to Defendant's motion to decertify, Plaintiffs' motion to strike evidence, Plaintiffs' motion to exclude witnesses, as well as Judge Hayes's orders on same. For the reasons set forth below, Plaintiffs' request is **Granted in Part and Denied in Part.**

## I.     BACKGROUND

On March 2, 2011, Plaintiff Reid Yeoman initiated this action by filing a Complaint in the Superior Court of California for the Country of San Diego. The Complaint contained one claim for violation of the Song-Beverly Credit Card Act of 1971. (Doc. No. 1.) On November 8, 2011, Plaintiff Yeoman filed an Amended Complaint and added Plaintiff Rita Medellin to the action. Plaintiffs allege that they purchased items from Ikea using their credit cards and that during the credit card transactions, the cashier asked Plaintiffs for their zip code and, believing that they were required to provide the requested information to complete the transactions, Plaintiffs provided it. (Doc. No. 25 at 3.)[1] Plaintiffs' complaint alleges that "Ikea systematically and intentionally violates the [Song-Beverly Credit Card Act of 1971] by uniformly requesting that cardholders provide personal identification information, including their ZIP codes, during credit card transactions, and then recording that information in electronic database systems." (*Id.* at 2.)

After receiving a number of extensions, Plaintiffs filed a Motion for Class Certification on January 13, 2012. (Doc. No. 30.) The motion was granted on May 4, 2012. (Doc. No. 43.) The certified class consisted of "all persons from whom Ikea requested and recorded a ZIP Code in conjunction with a credit card transaction in California from February 16, 2010 through the date of trial in this action." *Id*.
///

---

[1] For ease of reference, all pincites to documents filed on the CM/ECF system refer to the pagination assigned by the system.

Two months after the order certifying the class was issued, the parties sought to continue fact and expert discovery for 90 days because Defendant served its Second Supplemental Response to Request for Production of Documents and Plaintiffs believed additional Rule 30(b)(6) depositions were necessary. (Doc. No. 48-1 at 2.) Plaintiffs served an Amended Rule 30(b)(6) Deposition Notice on July 5, 2012, but Defendant's 30(b)(6) witness, Ms. Wallace, was not available for deposition prior the fact discovery deadline. (*Id*.) In their motion to extend time, the parties asked for an additional 90 days for discovery but did not specifically explain whether any other Rule 30(b)(6) designees needed an extension of the discovery deadline and Plaintiffs provided no other basis for seeking to extend the discovery deadlines by 90 days. (*Id.*) Accordingly, the Court found good cause to extend discovery solely to take the Rule 30(b)(6) witness deposition, but did not find good cause to otherwise extend fact or expert discovery deadlines. (Doc. No. 50.) Thus, the deadline to exchange expert reports remained set for September 17, 2012 and the deadline to supplement any expert reports or disclosures remained set for October 19, 2012. (Doc. Nos. 42, 50.)

On September 7, 2012, Defendant filed a motion to decertify or modify the class. (Doc. No. 51.) Defendant's motion stated that during discovery it learned: 1) that many cashiers circumvented the ZIP Code recording process; 2) Defendant's records cannot distinguish between certain debit card transactions, which are not covered by the Song-Beverly Credit Card Act, and credit card transactions; and 3) that transactions made at self-checkout kiosks are not covered by or are exempt from the Song-Beverly Credit Card Act.[2] (*Id.* at 51-1.) Defendant included a declaration from John Robinson, Treasurer for Ikea North America, in support of its motion to decertify the class. (Decl. Robinson; Doc. No. 51-7.) Mr. Robinson's declaration indicated that "Visa-branded and MasterCard-branded Signature Debit Cards appear in Ikea's transaction logs as "VISA" and "MC" transactions, rather than as "DEBT" for a debit card transaction. (*Id.* at ¶ 7.)

---

[2] Defendant also sought to have Plaintiff deemed an inadequate class representative, however, this basis for the motion to decertify is not at all relevant to the issues at hand.

The identification of the transaction as either "VISA" or "MC," however, does not mean that the transaction was not made using a "signature debit card" that requires a PIN. (*Id*. at ¶ 9.) In addition, Mr. Robinson stated that from February 1, 2010 to the present, customers dictate whether their purchases using signature debit cards should be processed as a traditional debit transaction requiring a PIN or as a signature requiring credit transaction. (*Id*. at ¶¶ 10-11.) Defendant has never kept a record of the customers' response to the prompt asking whether the payment should be processed as a debit or credit transaction, and the customers' "responses cannot be ascertained from the transaction logs or any other of [Defendant's] data or records." (*Id.* at ¶ 11.)

Notably, Plaintiffs did not seek to reopen discovery after reviewing Defendant's motion and Mr. Robinson's declaration. Rather, Plaintiffs filed a motion to exclude four other witnesses from providing evidence on the motion to decertify or at trial. (Doc. No. 61.) The motion to exclude did not mention Mr. Robinson's declaration or any of the issues his declaration addressed. (*See* Doc. No. 61.) Plaintiffs only alleged that these four witnesses were disclosed untimely and therefore should not be allowed to provide testimony or evidence in the case. (*Id.*) Judge Hayes denied the request to exclude the witnesses, finding that Defendant's disclosure was timely. (Doc. No. 93.)

Also of note is that Plaintiffs' opposition to the motion to decertify explicitly addressed Defendant's arguments with respect to the inability to distinguish between certain credit card and signature debit card transactions. (Doc. No. 67 at 12.) Plaintiffs were not at all concerned with whether Defendant could distinguish between the types of transactions and nowhere mentioned the need to conduct further discovery into the matter. In fact, Plaintiffs responded to Defendant's concern that there "is no class-wide means to determine liability," with the response that "by definition, individuals who did not make a purchase with a credit card are not members of the Class and they can determine that themselves from the criteria set forth in the Class definition." (*Id.*) Plaintiffs' only concern with respect to Mr. Robinson's declaration was made in a footnote. (Doc. No. 67 at n. 3.) The footnote simply requested that Judge Hayes not

consider Mr. Robinson's declaration due to their contention that the recent declaration contradicted earlier responses made in interrogatories and deposition testimony. (*Id.*) Plaintiffs did not mention a need to conduct additional discovery. (*See id*.) Moreover, Plaintiffs clearly stated that "even if Robinson's newly provided evidentiary submission is true, Class members can be identified through examining their credit card numbers to determine whether the transaction in question was made with a credit card or a debit card." (*Id.*, citing Plaintiffs' expert's declaration; McCormack Decl., at ¶¶ 12-19.) Finally, Plaintiffs argued that the only information necessary to determine the amount of the civil penalty was an analysis of the Defendant's conduct, not "the individual circumstances or beliefs of Class members." (*Id.* at 15.)

After receiving extensive briefing from both parties on the motion to decertify, as well as Plaintiffs' motion to exclude witnesses, strike witness declarations, Defendant's Second Supplemental Responses to Special Interrogatories, Set One, and portions of Mr. Robinson's declaration, Judge Hayes denied Plaintiffs' motion to strike and exclude. (Doc. No. 93.)  Judge Hayes also granted in part and denied in part Defendant's motion to decertify. (*Id.*)

Ultimately, the decision on the motion to decertify the class merely modified the class definition to:

> [A]ll persons from whom Ikea requested and recorded a ZIP Code in conjunction with a credit card transaction in California from February 16, 2010 through February 28, 2011 (the 'Class'). Excluded from the Class are (i) transactions wherein personal information was required for a special purpose incidental but related to the individual credit card transaction, including, but not limited to, information relating to shipping, delivery, servicing, or installation of the purchased merchandise, or for special orders; (ii) transactions wherein a credit card issued to a business was used; and (iii) transactions executed at self checkout kiosks.

*Id.* Therefore, the only change to the class definition was the modification of the class period and the exclusion of transactions executed at self-checkout kiosks. The order also specifically addressed Plaintiffs' and Defendant's arguments with respect to Defendant's inability to determine whether a credit card was technically used during certain signature debit card transactions. (*Id.* at 21.) Judge Hayes was not concerned with this difficulty or

potential impossibility, and found that "whether a credit card was actually used are not questions affecting individual members of the class because only credit card-paying customers from whom a ZIP code was requested meet the requirements for class membership." (*Id.*) Moreover, Judge Hayes was not troubled by the parties' inability to identify class members by name because "[a] procedure involving customer submissions will need to be established in order to ascertain the identities of class members." (*Id.* at 22.)

What is before the Court at this time is Plaintiffs' desire to belatedly amend the scheduling order so that discovery may be reopened for Plaintiffs to "gain access to and review [Defendant's] transaction logs, databases, and records with respect to its credit card transactions and its customers' information collected from February 16, 2010 through February 28, 2012 ("Class Period"). (Mot. to Reopen; Doc. No. 100-1 at 3.) In addition, Plaintiffs want to retain an additional expert consultant and therefore would like to reopen discovery in order to disclose a new expert. (*Id.*) Finally, Plaintiffs want to further amend the schedule and extend expert discovery so that they may take the depositions of eight witnesses Defendant disclosed in August 2012, as well as complete the deposition of Dr. Dennis H. Tootelian, which was cut short due to Dr. Tootelian's illness. (*Id.*) Defendant does not oppose Dr. Tootelian's deposition, but does oppose Plaintiffs' requests to reopen discovery and extend time to take the other expert witness depositions. (Opp'n at n. 4; Doc. No. 102.)

## II. APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 6(b) governs Plaintiffs' request to reopen discovery and designate an additional expert witness. The rule provides: "When an act may or must be done within a specified time, the court may, for *good cause*, extend time. . . on motion made after the time has expired if the party failed to act because of *excusable neglect*." Fed.R.Civ.P. 6(b)(1)(B) (emphasis added).

In *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 395 (1993), the United States Supreme Court established a four-part balancing

test for determining whether there has been "excusable neglect." Although that case involved Federal Rule of Bankruptcy Procedure 9006(b)(1), the Court reviewed the various contexts in which the phrase appears in the federal rules of procedure and made clear that the test applies in all of those contexts. *Id*. at 395. The factors include: (1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith. *Pioneer*, 507 U.S. at 395. *Pioneer* requires a flexible approach and one where no one factor is more significant than any other and cautioned against "erecting a rigid barrier against late filings attributable in any degree to the movant's negligence." *Id*. at 395 n. 14. The weighing of *Pioneer's* equitable factors is left to the discretion of the court. *Pincay v. Andrews*, 389 F.3d 853, 860 (9th Cir. 2004).[3]

With respect to Plaintiffs' request to extend the time to take eight depositions of witnesses Defendant designated as experts for trial, the good cause standard set for in Federal Rule of Civil Procedure 6 and 16 govern because the request was made before the original time to take all expert depositions expired on April 26, 2013. Fed. R. Civ. P. 6(b)(1), *see also* Fed. R. Civ. P. 16(b)(3) ("A schedule may be modified only for good cause and with the judge's consent."). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (citing Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment)). The focus of the inquiry is on the moving party's reasons for seeking modification, "if that party was not diligent, the inquiry should end." *Id.*

---

[3]Plaintiffs' moving papers do not argue the correct standard for reopening discovery. (*See* Mot. to Reopen at 3; Doc. No. 100-1.)  Plaintiffs incorrectly argue that the standard is merely "good cause" pursuant to Federal Rule of Civil Procedure 16(b)(3). The "good cause" standard for amending a scheduling order under Rule 16(b)(3) only applies when the time to act has not passed.  In this case the only deadline that had not passed when the motion was filed was the deadline to complete all expert depositions.

## III. DISCUSSION

### A. Plaintiffs' Motion to Reopen Discovery to Determine the Size of the Class

Plaintiffs want the Court to reopen discovery at this late stage so that they can gain access to and review Defendant's transaction logs, databases, and records with respect to credit card transactions in order to determine the size of the class. (Mot. to Reopen at 2.) In addition to reopening fact discovery, Plaintiffs also request that the Court permit them to reopen expert designations and disclosures so that they may retain an expert witness to assist them with their investigation, navigation and understanding of Defendant's transaction logs, databases, and records. (*Id*.)

Plaintiffs' motion is made more than nine months after fact discovery ended and more than six months after experts were to be designated. (Doc. No. 42.) The request is also made nearly nine months after Defendant served its expert designations, which contained a description of the allegedly "contradictory evidence" Defendant's Treasurer, John Robinson, would testify to regarding the fact that the company's records cannot differentiate between true credit card transactions and debit card transactions for purchases made with MasterCard and VISA signature debit cards. (Opp'n at Ex. F, Def.'s First Exchange of Expert Witness Information.) Moreover, the request for the discovery is made more than seven months after Defendant filed Mr. Robinson's declaration containing that same information. (*See e.g.,* Decl. Robinson; Doc. No. 51-7.)

#### 1. Whether Plaintiffs Have Established Excusable Neglect

First, the Court will balance the four factors set out in *Pioneer* to determine whether there has been excusable neglect such to excuse Plaintiffs' failure to abide by the scheduling order. Accordingly, the Court will address each factor in turn.

##### a. The Danger of Prejudice to the Non-moving Party

Plaintiffs contend that Defendant "cannot demonstrate any prejudice that outweighs Plaintiffs' need for the discovery." (Mot. to Reopen at 7.) First, the Court notes that this is not the proper inquiry. The inquiry is whether there is danger of

prejudice to Defendant. The Court finds that there is a danger Defendant will be prejudiced by reopening discovery this late into the case. First, Defendant will be prejudiced by the delay because Plaintiffs request an additional three months to conduct the discovery. Three additional months is not an insubstantial delay where the case would otherwise be primed for a final pretrial conference and trial. Second, Defendant will be prejudiced if Plaintiffs designate an additional expert because this will require Defendant to incur additional costs by having to designate an expert of its own to rebut whatever Plaintiffs' new expert offers opinions about, as well as to incur costs reviewing Plaintiffs' expert's opinion and taking the expert's deposition.

Moreover, the Court does not agree that any prejudice is outweighed by Plaintiffs' need for the discovery or that the need for the discovery is a result of Defendant's misrepresentation in interrogatories and during Mr. Robinson's deposition. Plaintiffs' argue that Defendant "lied about whether its records can distinguish between debit card transactions and credit card transactions," and that because of this lie Plaintiffs must conduct their own investigation. (*Id.*) The Court does not agree that Defendant lied. Based on the evidence before the Court, Defendant answered truthfully throughout discovery, but was not fully aware of the issue when it first responded to the interrogatories. Eventually, Defendant learned that the transaction logs did not in fact differentiate between MC and VISA signature debit card transactions that were processed like credit transactions versus transactions where a PIN was inputted. (Pls.' Reply at Ex. A; Doc. No. 105-2; Decl. Geibelson at Exs. B-C; Doc. No. 70-1; Decl. Robinson; Doc. No. 51-7.) After reviewing Mr. Robinson's deposition testimony, the Court finds that Mr. Robinson did not lie or mis-characterize what Defendant's records show. Rather, it appears that Plaintiffs' counsel did not understand Mr. Robinson's answers and assumed something that Mr. Robinson never said. (*See* Decl. Geibelson at Ex. B, Doc. No. 102-2.) Specifically, Plaintiffs' counsel asked Mr. Robinson whether "at some point later, past the cash register, can Ikea tell whether the transaction is a debit or credit transaction?" (*Id.*; Decl. Geibelson at Ex. B, Doc. No. 70-1.) Mr. Robinson merely

replied that Ikea does receive information that allows the company to make that distinction. (Decl. Geibelson at Ex. B, Doc. No. 102-2.) Mr. Robinson was not asked any follow-up questions to decipher what type of information is received that allows that distinction, whether that distinction is made on a transaction by transaction basis, or on a summary level. (*Id*.) There is no evidence before the Court of an intentional or unintentional misrepresentation. Instead the evidence indicates that there was a misunderstanding on the part of Plaintiffs' counsel. Defendant confirmed that the way the company distinguishes between the MC and VISA signature credit and signature debit transactions is through monthly summary reports. (*Id.* at Ex. D.) There is nothing before the Court indicating that Plaintiffs ever made a request for the summary reports.

Further, after reviewing the deposition of Plaintiffs' expert, Mr. McCormack, it is clear that he understood the information that would be needed to determine an estimated number of the VISA and MC transactions that are actually signature debit transactions. (Opp'n at Ex. H; Doc. No. 102-2 at 129-132.) Mr. McCormack opined that he might be able to approximate the number of MC and VISA signature debit transactions by first determining the ratio of credit and signature debit transactions at each store from the monthly summary statements sent by MC and VISA. (*Id*.) The expert would then apply those ratios to the transaction log files in order to estimate the number of transactions that were in fact credit transactions. (*Id*.) Mr. McCormack admitted, however, that he had not conducted that analysis and had not requested the data necessary to conduct the relevant analysis. (*Id*.) Therefore, Plaintiffs' own expert was aware of the issue and his need for additional data to conduct the analysis at least as far back as October 2012—six months before Plaintiffs made the request to reopen discovery.

In sum, the Court finds that the prejudice Defendant faces is not insignificant and could have been avoided entirely had Plaintiffs asked the necessary follow-up questions during Mr. Robinson's deposition, or sought to reopen discovery to request the information their own expert testified to needing in October 2012. This factor weighs

against allowing Plaintiffs to amend the scheduling order to reopen discovery at this time.

      b.  The Length of Delay and its Potential Impact on Judicial Proceedings

Plaintiffs' motion seeks to reopen fact and expert discovery for three more months. (Mot. to Reopen at 3.) Defendant contends that as a result of Plaintiffs not designating an expert on time, and by seeking an extension months after the time passed, this case will suffer unnecessary delay. (Opp'n at 18-22; Doc. No. 102.) In *Hartman v. United Bank Card, Inc.*,--- F.R.D. ----, 2013 WL 1442310 (W.D. Wash. 2013), the plaintiffs delayed nearly nine months following the original class discovery cut-off before moving for leave to take additional discovery. The court determined that the nine month delay before moving to take the discovery did not weigh in plaintiffs' favor. *Id.* at *4. Recently, a case from this district found that a ten month delay between a deadline and filing the motion was significant. *Level 3 Commc'ns, Inc. v. Lidco Imperial Valley, Inc.*, No. 11cv01258 BTM (MDD), 2012 WL 4848929, at *8 (S.D. Cal. Oct. 11, 2012).

    In the instant case, the total delay will be 12 months because Plaintiffs waited nine months before making the request to reopen and now want three months to conduct additional discovery. At this stage in the proceedings and given the many other discovery extensions the parties received, the delay is significant. Moreover, the three additional months of discovery that Plaintiffs want could have been addressed and dealt with many months ago, thereby eliminating any further delay since the discovery could have been conducted while the parties continued with expert discovery and litigated the motion to decertify. Reopening discovery at this juncture will further delay resolution of this case. Accordingly, this factor weighs against finding Plaintiffs' neglect excusable.

      c.  The Reason for the Delay

Plaintiffs' stated reason for the delay is that on September 7, 2012, they learned for the first time that Defendant cannot distinguish MC and VISA signature credit card from MC and VISA signature debit card transactions. (Mot. to Reopen at 8.) Plaintiffs claim they first learned this from Mr. Robinson's declaration filed in support of

Defendant's motion to decertify. (*Id.*) But rather than seek to conduct discovery into this information when the declaration was filed, Plaintiffs asked Judge Hayes to strike Mr. Robinson's declaration. (*Id.*) Plaintiffs state that they chose not to file the motion to reopen discovery while the motion to decertify was pending because had the motion to decertify been granted, there would have been no need to conduct discovery to determine the size of the class. (*Id.*) Although the decision on the motion to decertify was issued on February 27, 2013, Plaintiffs contend that they waited another two months before filing the motion to reopen discovery because they were in the process of filing briefs related to the Amended Motion to Compel Notice. (*Id.*)

Plaintiffs' proffered reasons for waiting months before seeking to reopen discovery are weak. Plaintiffs made a calculated decision to save time and money by not seeking the discovery sooner because there was a risk that the discovery would not be necessary if Judge Hayes decertified the class. Plaintiffs made a tactical decision not to act when they were made aware of the issue. The Court is not moved by the fact that Plaintiffs made a poor decision. "[T]actical decisions do not amount to affirmative showings of excusable neglect under Rule 6(b)." *African Am.Voting Rights Legal Defense Fund, Inc. v. Villa*, 54 F.3d 1345, 1350 (8th Cir. 1995); *see also Sil-Flo, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1519 (10th Cir. 1990) (characterizing failure to timely file counterclaim as tactical, and thus not due to excusable neglect); *Level 3 Commc'ns, Inc.*, 2012 WL 4848929, at *8 ("a deliberate decision" is "not excusable neglect).

In addition, Plaintiffs fail to acknowledge that as early as August 3, 2012 they were made aware of the facts that Mr. Robinson ultimately stated in his September 7, 2012 declaration. This is so because the exact same information about Defendant's inability to distinguish between MC and VISA credit and debit transactions was included in Defendant's First Exchange of Expert Witness Information. (Opp'n, Ex. F at 57-60.) Therefore, Plaintiffs were on notice prior to Defendant filing the motion to decertify, yet took no action at that time either.

///

Plaintiffs' reason for waiting two months after Judge Hayes issued his decision on the motion to decertify before filing the motion to reopen is even less compelling. Apparently, Plaintiffs believe the delay should be excused because they were in the process of crafting an Amended Motion to Compel Notice to the Class and filing a reply brief to Defendant's objections. It seems as if Plaintiffs misunderstand the nature of litigation and the fact that cases require multi-tasking. It is not excusable to delay filing a motion to reopen discovery for two more months because counsel is dealing with other aspects of the litigation. It is even less excusable when Plaintiffs are represented by two law firms.

There is no doubt that the reason for the delay was completely in Plaintiffs' control. The only stated basis for the delay was a strategic decision by counsel not to spend the time and money pursuing this discovery while Plaintiffs focused on other aspects of the case. Plaintiffs had complete control over the timing of this motion and had all the relevant information since August 2012. Accordingly, this factor weighs against finding excusable neglect.

### d. Whether the Moving Party's Conduct Was in Good Faith

The final factor is whether Plaintiffs acted in good faith. The Court is loathe to go to the extreme and characterize Plaintiffs' actions with respect to waiting to file the present motion as bad faith. It does not appear, however, that the calculated decision to wait this many months before asking to reopen discovery was in good faith. Plaintiffs made a deliberate and willful decision to act in the manner they have. They chose not to seek this discovery in August 2012 and instead attempted to have Mr. Robinson's declaration stricken. When that decision proved unfruitful, Plaintiffs waited two more months before seeking to file this motion—a willful and deliberate decision on their part. Though Plaintiffs' actions do not appear to be a "devious. . .or bad faith failure...," the Court cannot say that the conduct was in good faith. *See TCI Group Life Ins. Plan*, 244 F.3d at 698. Therefore, this factor does not weigh in either party's favor.

///

e. Balancing of All Factors

Given that there are no bright line or per se rules defining "excusable neglect," after balancing the equities in this case, the Court finds that the prejudice to Defendant, along with the delay to the case, and the fact that the delay was within Plaintiffs' control, weighs against determining that the neglect was excusable. Therefore, the Court denies Plaintiffs' motion to reopen discovery and to designate an additional expert.

2. The Court's Discretion to Limit Discovery Pursuant to Rule 26(b)(2)(C)

Notwithstanding Plaintiffs' failure to establish excusable neglect to warrant reopening discovery, the Court also finds that the discovery is not warranted under Federal Rule of Civil Procedure 26(b)(2)(C). Rule 26(b)(2)(C) requires the Court to limit the frequency or extent of discovery if it determines that the discovery is unreasonably cumulative, duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive. Rule 26 also requires that the Court limit discovery if the party seeking the discovery has had ample opportunity to obtain the information; or the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C).

The Court finds that Plaintiffs' request is duplicative, costly, that there was ample opportunity to obtain the discovery before, and that the discovery is not necessary considering Plaintiffs' representations in other court filings.

The request is duplicative because Plaintiffs were provided with the transaction data that they now want to investigate. (Opp'n at 9; Decl. Kawabata ¶¶ 3-6.) In addition to producing transaction data where valid ZIP codes were recorded, Defendant also produced the raw data for all transactions, regardless of whether they were credit card transactions, debit card transactions, or transactions where valid ZIP codes were not provided. (*Id.*) Plaintiffs admit that they received the transaction data from Defendant's Access database during the discovery period. (Pls.' Reply at 5; Doc. No. 105.) Plaintiffs, however, argue that nothing in the transaction logs and data support Mr. Robinson's statements regarding the inability to decipher whether some of the transactions logged as

MC and VISA credit transactions were in fact made using a PIN. (*Id.*) Plaintiffs argue that they need a technical expert and access to Defendant's database in order to determine whether Mr. Robinson's most recent declaration contains truthful statements. (Pls.' Reply at 7.) Plaintiffs further contend that their current credit card industry expert cannot navigate and analyze databases to identify the information Defendant receives and maintains. (*Id.*) Regardless, Plaintiffs were provided with the transaction logs and the Access database and have had the opportunity to review the data for many months, therefore the discovery request is duplicative.

Additionally, the burden and expense of permitting Plaintiffs to reopen discovery outweighs the potential benefit of investigating whether Defendant's are truly unable to tell whether certain MC and VISA purchases were made as credit card or debit card transactions. Moreover, it is not clear whether any additional information exists that will concretely establish the number of *credit card* transactions where Defendant requested and recorded the customer's ZIP code. Plaintiff's own expert opined that because at the point of sale Defendant does not record whether a PIN rather than a signature is used for MC and VISA signature debit cards, he would have to estimate the number of credit transactions by determining an average ratio of credit to debit transactions for the relevant stores and then applying that ratio to the overall number of MC and VISA signature debit card transactions. (Opp'n at Ex. H; Doc. No. 102-2.) Accordingly, Plaintiffs' expert essentially conceded that discovery they now seek will not accurately determine the size of the class. Thus, the burden and expense outweighs the potential benefit of allowing the discovery.

Plaintiffs have also failed to explain how this additional discovery will affect the disposition of the case. *See e.g., Davis v. Ramen*, 501 Fed. Appx.660, 660 (9th Cir. 2012) (holding district court did not abuse discretion by declining to reopen discovery where plaintiff did not explain how the additional discovery would affect the disposition of the case). This is significant because in their opposition to the motion to decertify, Plaintiffs conceded that the fact that Defendant's records do not distinguish between

certain credit and debit transactions is irrelevant because "by definition, individuals who did not make a purchase with a credit card are not members of the Class and they can determine that themselves from the criteria set forth in the Class definition." (Doc. No. 67 at 12.) And most importantly, Judge Hayes explicitly determined that "individual proof is [not] necessary to determine any penalty award in this case. If Defendant's uniform policy of requesting ZIP codes is found to have violated the Song-Beverly Credit Card Act on a classwide basis, any penalty imposed by this Court must serve to deter future violations rather than compensate individual class members for actual injuries suffered by virtue of individual circumstance." (Doc. No. 93 at 23.)

In the case at bar, Defendant has explained why it cannot differentiate these types of transactions in its logs and has also produced all of the transaction logs, as well as the Access database. There is no reason to believe that additional investigation into the transaction logs and database will be anything other than time consuming, costly, duplicative, and likely unfruitful. Any benefit to conducting this additional investigation is far outweighed by the burden and expense that both parties will incur.

Plaintiffs' motion to reopen fact discovery and designate an additional expert is also **DENIED** pursuant to Rule 26(b)(2)(C).

### B. Plaintiff's Motion To Extend the Deadline to Complete Expert Depositions

As identified above, the standard governing Plaintiffs' request to take depositions of designated experts is whether there is good cause. The good cause standard primarily considers whether Plaintiffs acted with diligence in pursuing the discovery. *Johnson*, 975 F.2d at 609. Here, Plaintiffs want to depose eight witnesses that Defendant identified in August 2012. (Mot. to Reopen at 3.) When Plaintiffs filed the instant motion, two days of expert discovery remained and Plaintiffs could not complete eight depositions in that amount of time. (*Id.*) Actually, as of April 26, 2013, Plaintiffs had not provided Defendant with notice of these depositions—therefore it would have been impossible to take the depositions within the time imposed by the scheduling order. (Opp'n at 12.)

The Court is not at all convinced that Plaintiffs acted diligently in pursuing these depositions. In fact, the Court finds that Plaintiffs made several strategic decisions to not proceed with the depositions and only seek this extension because those tactical choices did not pan out. Plaintiffs were made aware of Doug Greenholz, Sunny Nakauchi and Norbert Bickling on July 10, 2012 and again in Defendant's expert witness disclosures on August 3, 2012. (Doc. No. 102-2 at 78-79; Doc. No. 66.) Defendant also identified Daniel Akalou and Mark Strausberg as experts on August 3, 2012. (Doc. No. 102-2 at 78, 82; Doc. No. 66.) Defendant identified Michael Moxley as an expert witness on August 17, 2012—14 days after initial expert designations, but on the deadline for supplementing experts. (Doc. No. 102-2 at 105; Doc. No. 66.) Timothy Reilly and Matthew Scott were also disclosed on August 14, 2012 as experts intended to offer opinions to rebut or supplement Plaintiffs' expert opinion evidence. (Doc. No. 69 at 5.)

The deadline to complete expert depositions was set for April 26, 2013, therefore, Plaintiffs had nine months to depose these witnesses. Plaintiffs contend that they chose not to depose these witnesses between August 2012 and February 27, 2013 because on September 20, 2012 they filed a motion to exclude these witnesses. (Mot. to Reopen at 3.) Plaintiffs' motion to exclude argued that despite the fact that all eight of these witnesses were disclosed prior to the fact and expert discovery deadlines, Defendant's disclosures were not timely. (*See* Doc. No. 66.) Not surprisingly, on February 27, 2013, Judge Hayes denied the motion to exclude. (Doc. No. 93.) Plaintiffs' excuse for not deposing these witnesses after the motion to exclude was issued is that scheduling conflicts prevented calendaring any of the depositions. (Mot. to Reopen at 3.)

Defendant's opposition does not really address Plaintiffs' request to extend time to take these depositions. (*See generally* Opp'n; Doc. No. 102.) Defendant contends that Plaintiffs never noticed these depositions or actually requested deposition dates at any time between February 27, 2013 and April 24, 2013. (*Id*. at 12; Decl. Geibelson at ¶¶ 8-9.) Defendant further argues that Plaintiffs have not adequately addressed what steps

they took to comply with the expert deposition deadline and the request should be denied on that basis alone. (Opp'n at 15.)

The record indicates that for many months Defendant was willing to produce all of these witnesses for fact and expert related depositions. (*See* Doc. No. 69.) In fact, Defendant remained willing to produce these witnesses for combined fact and witness depositions ever after being served with Plaintiffs' motion to exclude these witnesses. (*Id.*) When Judge Hayes denied the motion to exclude, Plaintiffs still did not schedule the witnesses depositions. Furthermore, the Court does not find that difficulties scheduling depositions over a two month period establishes that Plaintiffs were diligent with respect to pursuing this discovery. Diligence would have been shown by Plaintiffs formally noticing the depositions and seeking assistance from the Court with respect to ordering the depositions if scheduling conflicts made it impossible to complete the discovery within the time allotted. That was not done.

Despite the fact that the Court does not believe that Plaintiffs were diligent in pursuing these depositions, because Defendant was not opposed to Plaintiffs deposing these witnesses and represented as much in its opposition to Plaintiffs' motion to exclude the witnesses, the Court will grant Plaintiffs the opportunity to take these depositions. This will ultimately benefit all parties and the Court because there will be less chance for surprise at trial. Moreover, allowing these depositions will not delay the case because they can be scheduled and completed in advance of the pretrial conference. Plaintiffs have until **August 30, 2013** to depose these witnesses.[4]

In the event that the parties face scheduling difficulties, the Court is happy to mediate those disputes. If such issues arise, the parties are to follow Chambers' Rules and JOINTLY contact the Court regarding the dispute.

### III. CONCLUSION

After thoroughly considering each of the *Pioneer* factors, the Court concludes that Plaintiffs do not satisfy the excusable neglect standard and good cause does not appear to

---

[4] Dr. Tootelian's deposition must also be completed in this time period.

amend the schedule and reopen discovery. Accordingly, the motion to reopen discovery and designate another expert is DENIED. The motion is GRANTED as it relates to Plaintiffs' request to extend time to take depositions of the expert witnesses Defendant designated to testify at trial.

    IT IS SO ORDERED.

DATED: July 10, 2013

Hon. Bernard G. Skomal
U.S. Magistrate Judge
United States District Court