1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11
12

REID YEOMAN and RITA
MEDELLIN, *on behalf of themselves
and all others similarly situated*,

13
                                                              Plaintiff,

14
15
16
17
                                          v.

18
IKEA U.S.A. WEST, INC.,

19
                                                              Defendant.

Civil       11cv701-WQH (BGS)
No.

**ORDER DENYING DEFENDANT'S
MOTION TO BELATEDLY AMEND
THE SCHEDULE IN ORDER TO
FILE A MOTION FOR SUMMARY
JUDGMENT AS TO THE CLAIMS
OF ABSENT CLASS MEMBERS**

**[Doc. No. 138]**

20
21
22
23
24
25
26
27
28

Defendant filed the instant motion seeking leave to amend the schedule in order to file a motion for summary judgment. The proposed motion seeks summary judgment as to " the absent class members' claims on the ground that Plaintiff has no evidence to, and no witness who can, establish the occurrence of a violation of the Song Beverly Credit Card Act other than with respect to Plaintiff's own claim." (Doc. Nos. 129 at 4; 138). Plaintiff opposes the motion. (Doc. No. 140.) The Court has thoroughly reviewed all of the papers filed by both parties, not only with respect to the pending motion to amend the schedule, but also all of the papers filed in support of and opposition to Defendant's

1   motion to decertify and motion in limine regarding its process for entering zip codes at

2   the register, as well as Judge Hayes's orders on the motions. For the reasons set forth

3   below, Defendant's request is **Denied.**

4         **I.     BACKGROUND RELEVANT TO INSTANT MOTION[1]**

5         Plaintiff's complaint alleges that "Ikea systematically and intentionally violates the

6   [Song-Beverly Credit Card Act of 1971] by uniformly requesting that cardholders

7   provide personal identification information, including their ZIP codes, during credit card

8   transactions, and then recording that information in electronic database systems." (*Id.* at

9   2.) Plaintiff's Motion for Class Certification was granted on May 4, 2012. (Doc. No. 43.)

10  The certified class consisted of "all persons from whom Ikea requested and recorded a

11  ZIP Code in conjunction with a credit card transaction in California from February 16,

12  2010 through the date of trial in this action." *Id.*

13        On July 10, 2012, two months after the order certifying the class was issued, the

14  parties sought to continue fact and expert discovery for 90 days because Plaintiff

15  believed additional Rule 30(b)(6) depositions were necessary and could not be

16  completed before the July 13, 2012 fact discovery deadline.  (Doc. No. 48-1 at 2.)  In

17  their motion to extend time, the parties asked for an additional 90 days for discovery but

18  did not ask to extend any other deadlines. (*Id.*) Accordingly, the Court found good cause

19  to extend discovery solely to take the Rule 30(b)(6) witness deposition, but did not find

20  good cause to otherwise extend any other dates or deadlines. (Doc. No. 50.) Thus, the

21  deadline to file motions other than motions in limine remained set for October 22, 2012.

22  (Doc. Nos. 19, 42, 50.)

23        On September 7, 2012, Defendant filed a motion to decertify or modify the class

24  because during discovery it learned: 1) many cashiers circumvented the ZIP Code

25  recording process; 2) Defendant's records cannot distinguish between certain signature

26  debit card transactions, which are not covered by the Song-Beverly Credit Card Act, and

27

28        [1]The parties are well aware of the complete background of this matter and it has been set
forth in previous orders, including the Order Granting in Part and Denying in Part Plaintiff's
Motion to Amend the Schedule and Reopen Discovery. (Doc. No. 114.)

1   credit card transactions; and 3) transactions made at self-checkout kiosks are not covered

2   by or are exempt from the Song-Beverly Credit Card Act. (*Id.* at 51-1.)

3        Notably, when Defendant filed the motion for decertification, it did not seek to

4   extend the deadline to file further motions, including any potential motions for summary

5   judgment.  Further, the motion to decertify explicitly raised the very issue that

6   Defendant's requested motion for summary judgment intends to address.  (*Id.*)

7        On September 28, 2012—about a month before the deadline to file dispositive

8   motions—the parties jointly requested to continue expert discovery deadlines.  (Doc. No.

9   64.)  The request only sought to extend the deadline to exchange supplemental expert

10  reports and complete expert witness depositions.  Defendant did not address a need to

11  amend the schedule in order to reserve the right to file a motion for summary judgment.

12  (*See id.*)  And on January 3, 2013, the parties filed a motion to continue the pretrial

13  conference date by 90 days because Defendant's motion to decertify, Plaintiff's motion

14  to exclude witnesses, and Plaintiff's motion to compel class notice remained pending.

15  (Doc. No. 87.)  The parties sought to be relieved of their duty to prepare pretrial

16  submissions because they did not know the outcome of the significant pending motions.

17  (*Id.*)  Importantly, the motion made no mention of Defendant's intent to file a motion for

18  summary regarding the claims of absent class members.  The Court vacated the deadlines

19  to complete expert discovery and the final pretrial conference.  (Doc. No. 88.)  The Court

20  further directed the parties to contact Judge Skomal's chambers within three days of

21  receiving a decision on any of the pending motions so that the expert discovery deadline

22  and pretrial conference could be reset.  Because the parties never contacted the

23  undersigned's chambers as directed, on March 19, 2013, the Court *sua sponte* issued an

24  amended scheduling order setting a deadline for the completion of "any and all

25  remaining expert discovery," as well as a date for the final pretrial conference and

26  corresponding pretrial filings.  (Doc. No. 94.)

27  ///

28  ///

11cv701-WQH

Throughout March and April 2013, the parties litigated the issue of class notice. (Doc. Nos. 95, 96, 98.)  Although Defendant filed extensive briefing and exhibits in opposition to Plaintiff's plan for notice, Defendant never mentioned its intent to belatedly amend the schedule in order to file a motion for summary judgment as to the absent class members' claims.  (*See generally* Doc. No. 96.)

Also relevant to Defendant's present request to amend the schedule is the fact that Plaintiff moved to amend the schedule in April 2013—after the decision on Defendant's motion to decertify was issued.  (Doc. No. 100.)  In opposition to Plaintiff's motion, Defendant strenuously objected to amending the schedule because it would cause delay. In fact, Defendant characterized Plaintiff's request as a "lengthy and unexplained delay in pursuing the relief she now so belatedly seeks...." (Doc. No. 102 at 7.)  Defendant's opposition emphasized that the Court amended the schedule on the parties' request numerous times, but Plaintiff never expressed a need to take further discovery in any of those requests for extensions. (*Id*. at 11-12.) As the parties are well aware, the Court denied Plaintiff's motion to amend the schedule.

On October 14, 2013, Defendant filed the parties' Joint Motion to Continue the Mandatory Settlement Conference and final Pretrial Conference.  (Doc. No. 123.)  The motion specifically contemplated the parties' need to complete class notice before proceeding to trial, but notably omitted any reference to the need to amend the schedule in order for Defendant to file a motion for summary after class notice was sent.  (*Id*. at 2.) In fact, Defendant waited until eight months after Judge Hayes denied Defendant's motion to decertify before first mentioning its intent to file a motion for summary judgment as to the absent class members' claims.  (*See* Mot. in Limine to Exclude Ikea's Process for Entering Zip Codes; Doc. No. 127.)

Significantly, the motion Defendant seeks to file if allowed to amend the schedule would not dispose of the case.  The motion solely seeks a decision akin to decertification of the class action.  Defendant argues "Plaintiff cannot offer any *admissible* evidence by which to prove the occurrence of requests for or the recording of zip codes of any

4

putative class member that violates the Song Beverly Credit Card Act other than with respect to three particular individuals." (Doc. No. 138 at 2 (emphasis added).) Defendant, however, raised this same issue in its Motion in Limine to exclude its " 'Process for entering Zip Codes at the register' (IKEA 000286) and any testimony about IKEA's cashiering process. . . ." (Doc. No. 127-a at 6.)  On February 20, 2014, Defendant's motion in limine was denied because the court found "Defendant has not established that Rule 406, or any other authority, precludes the admission of the 'Process for entering Zip Codes at the register,' at this state in the proceedings."  (Doc. No. 153 at 5.)

Although Judge Hayes denied the motion in limine, Defendant still seeks to amend the schedule in order to file a motion for summary judgment as to the absent class members' claims.

## II.   APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 6(b) governs Defendant's request to amend the schedule to file a belated motion for summary judgment. The rule provides: "When an act may or must be done within a specified time, the court may, for *good cause*, extend time. . . on motion made after the time has expired if the party failed to act because of *excusable neglect*."  Fed.R.Civ.P. 6(b)(1)(B) (emphasis added).

In *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 395 (1993), the United States Supreme Court established a four-part balancing test for determining whether there has been "excusable neglect." Although that case involved Federal Rule of Bankruptcy Procedure 9006(b)(1), the Court reviewed the various contexts in which the phrase appears in the federal rules of procedure and made clear that the test applies in all of those contexts.  *Id*. at 395. The factors include: (1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith. *Pioneer*, 507 U.S. at 395. *Pioneer* requires a flexible approach and one

where no one factor is more significant than any other and cautioned against "erecting a rigid barrier against late filings attributable in any degree to the movant's negligence." *Id.* at 395 n. 14. The weighing of *Pioneer's* equitable factors is left to the discretion of the court. *Pincay v. Andrews*, 389 F.3d 853, 860 (9th Cir. 2004).

## III.   DISCUSSION

Defendant wants to amend the schedule at this late stage in order to file a motion for summary judgment regarding absent class members' claims. "If leave is granted, the motion for summary judgment will be made on the ground that plaintiff cannot offer any admissible evidence by which to prove the occurrence of requests for or the recording of zip codes of any putative class member that violates the Song Beverly Credit Card Act other than with respect to three particular individuals—named plaintiff Rita Medellin, former plaintiff Reid Yeoman, and another individual, Susan Hurtado...." (Doc. No. 138 at 2.)

Defendant's motion is made more than a year after the deadline to file motions for summary judgment expired, more than nine months after the motion to decertify was decided, and more than six months after Defendant opposed Plaintiff's request to amend the schedule.

## A.  Whether Defendant Established Excusable Neglect

The Court will balance the four factors set out in *Pioneer* to determine whether there has been excusable neglect such to excuse Defendant's failure to abide by the scheduling order. Accordingly, the Court will address each factor in turn.

### 1.  The Danger of Prejudice to the Non-moving Party

Defendant argues there is no prejudice to Plaintiff or the absent class members because being " 'forced to litigate on the merits cannot be considered prejudicial.' " (Doc. No. 138-1 at 12 (*quoting TCI Group Life Ins. Plan v. Knoebber,* 244 F.3d 691, 701 (9th Cir.)) Defendant's argument is based on a false premise.  Plaintiff does not oppose Defendant's request to belatedly file a motion for summary judgment in order to avoid litigating the case on its merits.  Rather, Plaintiff will suffer prejudice by having to

11cv701-WQH

oppose a motion for summary judgment that Defendant itself concedes is premised on the same issue already addressed in the motion to decertify and the motion in limine. (*Id.* at 6.) Plaintiff rightfully contends that having to oppose an issue twice decided by Judge Hayes will cause unnecessary expense and time. (Doc. No. 140 at 7-8.) Further, Defendant's contention that there is no prejudice in forcing Plaintiff to litigate on the merits is a non sequitur. Plaintiff is not seeking to avoid litigating this case on the merits—rather Plaintiff seeks to litigate the case on its merits at trial. There is no basis for Defendant to argue otherwise.

The Court also finds that Plaintiff and the absent class members will be prejudiced by amending the schedule because had Defendant made this request earlier—and especially if it was made prior to or at the same time Plaintiff made her request to amend the schedule—the Court very well may have reached a different conclusion with respect to Plaintiff's request to amend the schedule to conduct further discovery. At that time, Defendant adamantly objected to any delay and criticized Plaintiff for "d[oing] nothing for two months following the Court's Order on the motion to decertify." (Doc. No. 102 at 2.) Defendant further argued that Plaintiff's "strategic decisions and inaction are belied by the record and are not good cause [to amend the schedule] and reopen discovery." (*Id.*) The Court cannot help but be reminded of the idiom, "What is good for the goose is good for the gander." When Plaintiff wanted to belatedly amend the schedule, Defendant highlighted Plaintiff's inaction. This time it is Defendant's strategic decisions and inaction at issue. And Defendant's reasons for its strategic decisions and inaction are not any more compelling than Plaintiff's reasons were when she belatedly moved to amend the schedule.

In sum, the Court finds that Defendant could have filed the motion to amend the schedule prior to the deadline to file dispositive motions. Moreover, Defendant had numerous opportunities to, at a minimum, request an extension of the motion filing deadline in order to alert the court and opposing counsel of its intent to file a motion for summary judgment after class notice was sent.

11cv701-WQH

1    This factor weighs against allowing Defendant to amend the scheduling order so
2    that it may file a belated motion for summary judgment.

3        <u>b.</u>  <u>The Length of Delay and its Potential Impact on Judicial Proceedings</u>

4        Defendant's motion seeks to amend the schedule more than a year after Defendant
5    argued Plaintiff should not be allowed an extension of time to reopen discovery and
6    designate additional expert witnesses because the case would suffer unnecessary delay.
7    (Doc. No. 102 at 18-22.) Yet, Defendant now contends amending the schedule will not
8    result in any further delay to the case and it should be permitted to file a motion more
9    than a year after the deadline to file such motions passed. Defendant attempts to
10   convince the Court that the motion will not impact the proceedings because the only
11   additional delay will result from whatever amount of time it takes the district court to
12   decide the motion.  Defendant's argument is unavailing.

13       The final pretrial conference took place on February 27, 2014.  (Doc. No. 156.)
14   The district court ordered the parties to file additional motions in limine no later than
15   May 5, 2014, and set a hearing on those motions for July 10, 2014.  Finally, the trial in
16   this matter is set to begin September 9, 2014.  (*Id*.)  Thus, any change to the schedule at
17   this time will likely impact the timing of the motions in limine and the trial date.
18   Moreover, the motion Defendant seeks to file will not dispose of the entire case and the
19   need for the district court to hold a bench trial.  Therefore, any delay will not be avoided
20   even assuming *arguendo* Defendant prevails on its proposed motion for summary
21   judgment.

22       In *Hartman v. United Bank Card, Inc*.,--- F.R.D. ----, 2013 WL 1442310 (W.D.
23   Wash. 2013), the plaintiffs delayed nearly nine months following the original class
24   discovery cut-off before moving for leave to take additional discovery. The court
25   determined that the nine month delay before moving to take the discovery did not weigh
26   in plaintiffs' favor.  *Id.* at *4.  Recently, a case from this district found that a ten month
27   delay between a deadline and filing the motion was significant. *Level 3 Commc'ns*, *Inc*.

28

*v. Lidco Imperial Valley, Inc.*, No. 11cv01258 BTM (MDD), 2012 WL 4848929, at *8 (S.D. Cal. Oct. 11, 2012).

In the instant case, Defendant delayed more than 13 months after the deadline to file dispositive motions expired before filing the instant motion to amend the schedule. At this stage in the proceedings and given the many other extensions the parties requested and received, the delay is significant.  Although the potential motion's specific impact on the trial date is unknown because the district court's overall caseload affects the timing of decisions on motions, there is likely to be at least some delay. Moreover, Defendant could have addressed and dealt with the request to amend the schedule and sought to reserve the opportunity to file the proposed motion many months ago, thereby eliminating any further delay since the motion could have been filed at the same time as, or at any time after, the motion to decertify was filed.

Finally, Federal Rule of Civil Procedure 56, which governs Motions for Summary Judgment or Partial Summary Judgment states: "Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time *until* 30 days after the close of all discovery."  Fed. R. Civ. P. 56(b) (emphasis added).  In this case the Court did order otherwise, and the operative order set October 22, 2012 as the last day to file motions for summary judgment. Nevertheless, Rule 56 provides further support for this Court's determination that Defendant delayed too long before requesting to file a motion for summary judgment.  The very last day for all fact discovery was August 31, 2012 and the very last day to complete expert discovery was August 30, 2013—thus at the absolute latest, Defendant should have sought leave to file a motion for summary judgment by September 29, 2013.  Fed. R. Civ. P. 56(b). Defendant did not do so.

Accordingly, this factor weighs against finding Defendant's neglect excusable.

<u>c</u>.  <u>The Reason for the Delay</u>

Defendant's stated reason for the delay is that it chose not to file a motion for summary judgment as to the absent class members' claims prior to the time to file such a

1  motion expired because had the district court *granted* the motion prior to sending class

2  notice, the absent class members would not be bound by the judgment. Defendant relies

3  on *Schwarzchild v. TSE*, 69 F.3d 293 (9th Cir. 1995), to support its position.  As Plaintiff

4  rightfully points out, Defendant's excuse is "nonsense."  (Doc. No. 140 at. 10.)

5          While it is true that *Schwarzchild* holds that if a court issues a decision *granting*

6  summary judgment before notice is given to the class, the defendant waives the right to

7  issue notice to the class—it is not true that a defendant is unable to file for summary

8  judgement prior to issuing class notice. *See generally, Schwarzchild,* 69 F.3d at 296

9  (emphasis added).  Defendant, however, attempts to expand the narrow holding in

10  *Schwarzchild* to argue that Defendant *could not* have filed a motion for summary

11  judgment until class notice was sent. All that must take place for a decision granting

12  summary judgment to be binding on the class is that notice be sent before judgment is

13  ultimately granted.  *Id.* at 297.  There is no prohibition against filing the motion and

14  requesting that the judge wait to decide the motion until class notice is issued.  In the

15  instant case, Judge Hayes certified a class long before the deadline to file motions for

16  summary judgment expired.  Defendant made a calculated and strategic decision to file a

17  motion to decertify the class on the same grounds as the proposed motion for summary

18  judgment will be based, and the record indicates that it is only as a result of losing the

19  decertification motion that Defendant belatedly seeks the proverbial second bite at the

20  apple through a late summary judgment motion.  (Mot. to Decertify; Doc. No. 51-1 at 11-

21  13.)

22          Even if Defendant believed it *could not file* a motion for summary judgment until

23  after class notice was given, Defendant could have at least requested an extension of the

24  motion filing deadline and set forth its good cause for waiting to formally file the motion

25  until after class notice was issued.  Again, Defendant did not do so.

26          All of Defendant's proffered reasons for waiting more than a year before seeking

27  to amend the scheduling order and file a motion for summary judgment are weak.

28  Defendant made a calculated decision to file a motion to decertify the class and a

strategic decision to file a motion in limine on the same issue.  As the Court explained when Plaintiff made her belated motion to amend: "[T]actical decisions do not amount to affirmative showings of excusable neglect under Rule 6(b)."  *African Am.Voting Rights Legal Defense Fund, Inc. v. Villa*, 54 F.3d 1345, 1350 (8th Cir. 1995); *see also Sil-Flo, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1519 (10th Cir. 1990) (characterizing failure to timely file counterclaim as tactical, and thus not due to excusable neglect); *Level 3 Commc'ns, Inc.*, 2012 WL 4848929, at *8 ("a deliberate decision" is "not excusable neglect).

In addition, Defendant fails to acknowledge that as of May 4, 2012, it knew a class was certified and notice would be provided.  (Doc. No. 43.) And as of August 31, 2012, all fact discovery was complete and Defendant was fully aware of the evidentiary issues it now seeks to use as the basis for its motion for summary judgment. (Doc. No. 42.) There was nothing preventing Defendant from alerting the Court to its desire to file a motion for summary judgment and at least request an extension of the motion deadline based on the need to send class notice prior to filing the motion.

There is no doubt that the reason for the delay was completely in Defendant's control. The only stated basis for the delay was a decision by counsel not to request an extension of time and a decision not file the motion for summary judgment until after class notice was sent. Defendant had complete control over the timing of this motion and had all the relevant information to file the motion since August 31, 2012. Accordingly, this factor weighs against finding excusable neglect.

d.  Whether the Moving Party's Conduct Was in Good Faith

The final factor is whether Defendant acted in good faith. When Plaintiff filed her belated motion to amend the schedule, the the Court was loathe to characterize Plaintiff's actions as bad faith, and the Court is similarly loathe to characterize Defendant's delay in filing this motion as bad faith. It does not appear, however, that the calculated decision to wait this long before asking to amend the schedule was done in good faith. Defendant made a deliberate and willful decision to file a timely motion to decertify. Defendant also chose not to request an extension of the motion filing deadline during any of the five

motions to amend the schedule and extend deadlines filed after the class was certified. Additionally, Defendant strongly opposed Plaintiff's request to amend the schedule in May 2013.  Significantly, at the time Defendant opposed Plaintiff's request to amend the schedule, the decision on the decertification motion had already issued and Defendant was well aware that a class remained intact.  Yet, Defendant still failed to mention an intent to file a summary judgment motion as to the absent members' claims.  Analogous to the Court's characterization of Plaintiff's actions when she filed her belated motion to amend the schedule, the Defendant's actions with respect to this belated motion do not appear to be a "devious. . .or bad faith failure...," but the Court cannot say that the conduct was in good faith.  *See TCI Group Life Ins. Plan*, 244 F.3d at 698. Therefore, this factor does not weigh in either party's favor.

  e.  <u>Balancing of All Factors</u>

   Given that there are no bright line or per se rules defining "excusable neglect," after balancing the equities in this case, the Court finds that the prejudice to Plaintiff, along with the delay to the case, and the fact that the delay was within Defendant's control, all weigh against determining the neglect yes excusable. Therefore, the Court denies Defendant's motion to amend the schedule in order file a motion for summary judgment regarding absent class members' claims.


### III. CONCLUSION

  After thoroughly considering each of the *Pioneer* factors, the Court concludes that Defendant does not satisfy the excusable neglect standard and good cause does not appear to amend the schedule. Accordingly, the motion to amend is DENIED.

  IT IS SO ORDERED.

DATED:  March 20, 2014

Hon. Bernard G. Skomal
U.S. Magistrate Judge
United States District Court